## International Building and Loan Association
### *v.* Radebaugh et al.

[No. 19,487.   Filed June 18, 1902.   Rehearing denied December 11, 1902.]

Building and Loan Associations.—*Premium.*—A building and loan association can only require the payment of premium in gross, or instalments. It cannot require both. *p. 550*.

Same.—*Interest.*—*Premium.*—*Maturity of Stock.*—A building and loan association contract provided that the stock should mature at the end of six and one-half years from the date of issue, or when the monthly dues paid and profits apportioned should amount to $3,000, the face value thereof. The borrower received but $2,700, the association retaining $300 as a gross premium, and paid monthly dues, interest, and premium on the $3,000 for six years and eight months. The dues paid amounted to $1,560, and profits amounting to $1,039.06 had been apportioned to the stock. *Held*, that the overpayment of interest and premium amounting to $199.50, and the gross premium of $300 retained, should be credited to the borrower's account, and when so credited the stock would amount to $3,098.56. *pp. 550–552*.

From Blackford Circuit Court; *E. C. Vaughn*, Judge.

Action by the International Building and Loan Association against Jonas P. Radebaugh and others to foreclose a mortgage. From a judgment for defendants, plaintiff appeals. Transferred from Appellate Court, under §1337u Burns 1901. *Affirmed*.

*W. N. Harding*, *A. R. Hovey* and *A. M. Waltz*, for appellant.

*J. A. Hindman* and *Maurice Powell*, for appellees.

Monks, J.—Appellant, a building and loan association organized under the laws of this State, sued appellees upon a contract for the payment of money, and to foreclose a mortgage on real estate given to secure said contract. A trial of said cause resulted in a judgment in favor of appellees. The contract and mortgage were executed May 28, 1891, to secure a loan of $3,000 to a shareholder of appellant. Thirty shares of stock in appellant association were also assigned to appellant as collateral security for said loan. At the time the loan was made by appellant, the statute, §6, Acts 1885, p. 83, required the loans to be made to the members of the association in open meeting; the premium to be paid at one time or in instalments. In this case there was no bidding, but the loan was made, and the contract provided for the payment of a premium of five per cent. per annum on $3,000, payable monthly. The borrower, however, received only $2,700; $300 being deducted and retained by appellant as a gross premium.

Appellant could only require a premium in gross, or in instalments. It had no power to require both. It is insisted, however, by appellant, that section nine of the act of 1897 (Acts 1897, p. 287, §4463i Burns 1901) legalizes contracts for the payment of premiums without bidding. It was so decided by this court in *International, etc., Assn. v. Wall*, 153 Ind. 554; but said section does not profess to legalize the taking of two premiums,—the one in gross, and the five per cent. per annum premium payable monthly.

This action was commenced January 19, 1899. The monthly dues on stock were paid for six years and eight months. The premium and interest were paid for six years and seven months. This, appellees insist, paid the loan under the terms of the contract. Appellant insists that

notwithstanding its promise in the certificate of stock to pay $100 for each share of stock at the end of six and one-half years, the other provisions therein, when construed there·with, show that the same does not mature until after the dues paid and the profits apportioned to each share of stock amount to $100,— its face value,—although more than six and one-half years from the date thereof. It is not necessary to decide, and we do not decide, which of said theories is the correct one, for the reason that, even if appellant's theory is correct, the judgment rendered is not shown by the record to be erroneous.

The certificate of stock provided that appellant would pay $100 for each of said thirty shares at the end of six and one-half years from May 1, 1891, the date of said certificate. Said certificate also provided that "at stated periods the profits arising from interest, premiums, fines, and other sources shall be apportioned among the shares in good standing, and whenever the monthly payments made on shares, together with the profits apportioned to such share, shall amount to $100, such share shall be deemed to have been matured and no more monthly payments shall be required. No share of stock of this association shall be deemed to have matured until the sum of all payments thereon, together with the profits apportioned to said share, shall amount to the full sum of $100."

There was evidence given at the trial that dues had been paid on said thirty shares of stock for eighty months, amounting to $1,800, and that profits amounting to $1,039.06 had been apportioned to said stock as provided in the certificate of stock. The amount of monthly payments of interest and premium for said seventy-nine months was $1,975, while the amount of premium and interest on $2,700,—the amount received by the borrower,—was only $1,775.50, showing an overpayment of said interest and premium of $199.50. Add said sum of $199.50 and the $300 gross premium retained by appellant to the dues

paid and dividends declared, as above stated, and we have $3,338.56, which is $338.56 more than the amount required to mature said stock. Under such evidence this court can not say that the finding was contrary to law, or not sustained by sufficient evidence.

Judgment affirmed.

## On Petition for Rehearing.

Per Curiam.—Appellant insists that under its by-laws only sixty-five cents of the seventy-five cents paid monthly on each of said thirty shares of stock for eighty months should be credited to appellees as dues paid, and that counting the dues paid on this basis they amount to only $1,560 instead of $1,800.

Even if this insistence of appellant's is correct, a question we do not decide, it would not change the result. Taking $1,560 as the amount of dues to which appellees were entitled to credit, and add thereto $1,039.06, the profits apportioned to said stock, $300 deducted from the loan and retained by appellant as a gross premium, and $199.50 premium and interest paid on said $300 not received, and we have $3,098.56, being $98.56 more than required to mature said stock.

The other questions presented in the petition for a rehearing were considered and determined in the original opinion.

The petition for a rehearing is denied.